**2014-1474**

**(Serial No. 10/770,767)**

# United States Court of Appeals

# for the Federal Circuit

### IN RE: GROSS

*Appeal from the United States Patent and Trademark Office,*

*Board of Patent Appeals and Interferences*

## (CORRECTED) BRIEF FOR APPELLANT

J. Nicholas Gross
Law Office of J. Nicholas Gross, PC
PO Box 9489
Berkeley, CA 94709
(510) 540-6300
(510) 540-6315
Attorneys for Appellants

September 22 2014

# UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT

## IN RE: GROSS
## No. 2014-1474

## <u>CERTIFICATE OF INTEREST</u>

Counsel for Appellant <u>John N. Gross</u> certifies the following:

1. The full name of every party or amicus represented by me is:

**John N. Gross**

2. The name of the real party in interest (if the party named in the caption is not the real party in interest) represented by me is:

**Mediaqueue LLC**

3. All parent corporations and any publicly held companies that own 10 percent or more of the stock of the party or amicus curiae represented by me are:

**None**

4. The names of all law firms and the partners or associates that appeared for the party or amicus now represented by me in the trial court or agency or are expected to appear in this court are:

**Law Office of J. Nicholas Gross, P.C.**

<u>September 22, 2014</u>

J. Nicholas Gross
Counsel for Appellant

# TABLE OF CONTENTS

I.    STATEMENT OF RELATED CASES.................................................1

II.   STATEMENT OF JURISDICTION ...............................................1

III.  STATEMENT OF THE ISSUES.....................................................2

IV.   STATEMENT OF THE CASE .......................................................3

V.    STATEMENT OF THE FACTS ......................................................4

   A.  The Claims ..............................................................................4

   B.  The Prosecution History and Appeal ..................................10

VI.   SUMMARY OF THE ARGUMENT .............................................15

VII.  ARGUMENT .............................................................................16

   A.  Standard of Review................................................................16

   B.  The Board Decision is Error On Multiple Grounds .............17

    1.  The PTAB Erred In Affirming The Examiner's Rationale For The  Written Description Rejection ................................................................18

    2.  The PTAB Erred In Re-Writing The Written Description Rejection .............20

    3.  The PTAB Erred In Ignoring The "Summary of Claimed Subject Matter" Set Out In the Brief Which Identified Support For the Claims.....................................21

    4.  There Is Ample Written Description For the "Comparing" and Then Removing Steps .........................................................................24

        a)   *The Board Disregarded Passages Describing Item "Bumping" (Which Encompasses Removal) With The "Comparing" Operation* …..24

        b)   *The Disclosure Also Shows "Comparing" as part of "Monitoring" And Thus Part of "Removing" as Well*……………………………..26

VIII. CONCLUSION AND STATEMENT OF RELIEF SOUGHT.......................30

# <u>TABLE OF AUTHORITIES</u>

<u>CASES</u>

<u>Dickenson v. Zurko</u>, 527 U.S. 150 (1999) …………..……………………………..24

<u>Eiselstein v. Frank</u>, 52 F.3d 1035 (Fed. Cir. 1995 …………...……….……………..17

<u>Hyatt v. Doll</u>, 576 F.3d 1246 (Fed. Cir. 2009)…………..…………...……………..15

<u>ICU Med., Inc. v. Alaris Med. Sys., Inc.</u>, 558 F.3d 1368 (Fed. Cir. 2009) …….. . . . 16

<u>In re Adler</u>, 723 F.3d 1322 (Fed. Cir. 2013) …………..…………...……………..19

<u>In re Alton</u>, 76 F.3d 1168 (Fed. Cir. 1996) …………….……….…..……………..15

<u>In re Gosteli</u>, 872 F.2d 1008 (Fed. Cir. 1989) …………..……….......………….17, 25

<u>In re Leithem</u>, 661 F.3d 1316 (Fed. Cir. 2011) ………...……….……………....21

<u>In re McNeil-PPC, Inc.</u>, 574 F.3d 1393 (Fed. Cir. 2009) …………………………16

<u>In re Owens</u>, 710 F.3d 1362 (Fed. Cir. 2013) …………..………………………….16

<u>Vas-Cath, Inc. v. Mahurkar</u>, 935 F.2d 1555 (Fed. Cir. 1991) ….………...……..……17

REGULATIONS

37 C.F.R. 41.37……………………………………………………………passim

## I.    STATEMENT OF RELATED CASES

The present application claims priority to a provisional application no. 60/443,940 filed January 31, 2003.  A number of appeals[1] are presently pending before this Court for related applications:

1. Media Queue v. Netflix, No. 2010-1199, -134) in connection with US Patent No. 7,289,343;

2. Appeal No. 14-1429 in connection with serial no. 10/771,094;

3. Appeal No. (TBD) in connection with reexamination control no. 95/000,469, which is associated with the aforementioned US Patent No. 7,289,343;

These patents/applications claim different subject matter – but have a common specification and derive priority to the same '940 provisional application.

## II.    STATEMENT OF JURISDICTION

The Board of Patent Appeals and Interferences ("Board") had jurisdiction under 35 U.S.C. §134(b). This Court has jurisdiction under 35 U.S.C. §141 over the present appeal from the final decisions of the Board dated August 19, 2013 and February 2, 2014 (on reconsideration/rehearing). Appellant timely filed this appeal on April 1, 2014 in accordance with 37 C.F.R. §1.304.

---

[1] This case is in abeyance while one of the defendants, Blockbuster, winds through Bankruptcy proceedings.

## III.    STATEMENT OF THE ISSUES

1. Whether the Board erred in affirming a written description rejection for claims 1- 30  that is based on re-characterizing the substance of the Examiner's argument against such claims;

2. Whether the Board erred in not considering elements of Appellant's Appeal Brief directed to the written description rejections because it labeled them as not part of the "Argument" section of such filing;

3. Whether the Board erred in upholding the written description rejection even under the assumption that their re-write of the Examiner's rejection was correct.

The record demonstrates that the Board's opinion specifically <u>reversed</u> in fact the Examiner's <u>actual</u> contention - that the disclosure did not show automatically removing titles from a subscriber queue - in finding a lack of description for the claims.  But the Board misunderstood the gist of the Examiner's rejection against the claims, and went on to fault Appellant for not addressing other language in the claim limitation that was not actually in dispute or made of record.

Appellant submits that the Board failed to appreciate that it had in fact found the heart of the Examiner's reasoning and evidence faulty.  It went further and erred in effectively inventing a new interpretation to affirm his conclusion.  As explained

2

below, however, even assuming the Board's understanding of the rejection is correct, Appellant more than demonstrated support for the claims in question.


## IV.     STATEMENT OF THE CASE

The PTAB here rejected four of the five Examiner findings, including on indefiniteness, anticipation and obviousness.  The only grounds that was affirmed is the one challenged here: for lack of written description under 35 U.S.C. § 112. [A022]

The Board affirmed the written description rejection, holding that the Appellant had not addressed (their interpretation of) the Examiner's position: that the disclosure did not teach that "…an item is actually removed from the queue <u>based on a comparison step as claimed</u>."  [A010]  The emphasis is in the Board's original decision, and highlights the panel's impression that the Examiner's rejection was based on the second part of claim limitation above, namely, the "comparing" step.

Appellant moved for reconsideration to the Board challenging this decision on a few different grounds.  [A237-241] First, Appellant explained that the Board had misread the Examiner's argument of record.  The Examiner had <u>not</u> challenged the presence of the second part of the limitation (the "comparing" step) but, rather, only the first part, whether  "…*an item is actually removed from the queue*."  This was the argument repeatedly made in the Answer and has been the crux of the debate for almost 6 years, so it was most certainly addressed in full by Appellant.  As the Answer

reveals, hardly a word was raised anywhere by the Examiner about the "comparing" language.  Appellant further pointed out that the Board had overlooked several passages in the Brief and Reply that nonetheless directly related to the "comparing" step they now contended was ignored.

The Board denied the request for reconsideration on various grounds discussed in more detail below.  Appellant appeals from these decisions.

## V.     STATEMENT OF THE FACTS

### A.     The Claims

The present disclosure relates generally to an automated system/method that assists online subscribers in maintaining electronic wish lists of media items.  To do this the subscriber can enlist certain "monitoring" assistance from an automated agent.  [A046] Claim 1 is representative of the claims at issue here; the language in dispute is highlighted in **bold** below:

1.     A method of monitoring a queue maintained by a content provider for a subscriber, the method comprising the steps of:

(a)     setting up a subscriber rental queue for the subscriber on a computing system, said subscriber rental queue consisting of a list of one or more playable media items desired by the subscriber;

(b)     setting up queue monitoring control rules on said computing system for the subscriber rental queue; and

(c)     **automatically monitoring** said subscriber rental queue with said computing system in accordance with said queue monitoring control rules to determine if a change should be made to a composition and/or ordering of said list;

(d)     **based on the results of step (c) performing a step with the computing system of**: 1) automatically selecting a first proposed playable media item to be added to the subscriber rental queue; and/or 2) **automatically selecting a second proposed playable media item to be removed from the subscriber rental queue;**

wherein the computing system supports both steps (d)(1) and d(2); further wherein at least for step (d)(2) **said monitoring compares content of playable media items previously selected by the subscriber with content of playable media items in said subscriber rental queue, including said second proposed playable media item, to determine if said second proposed playable media item should be removed**;

(e)     modifying said subscriber rental queue with the computing system based on an authorization from the subscriber to generate a new ordered list of one or more playable media items in response to the results of steps (c) and (d); wherein at least some playable media items including said second proposed playable media item can be automatically removed by the computing system for the subscriber from said subscriber rental queue in response to said authorization.  [A162-163]

As claim 1 recites, the subscribers set up a queue that identifies items they want (step (a)).  As part of such set up they can also elect to implement "monitoring" control rules for their account (step (b).  After that the subscriber account is automatically monitored by the system to determine if/what changes should be made, such as for example changing the titles, or their ordering. (step (c)).  Based on such determination, items are then automatically selected for inclusion or removal in their accounts (step (d)).  Step (d) further recites that the monitoring (step (c)) determines

whether to remove an item by comparing it (and other current items in the rental queue) to content of prior items selected by the subscriber.  If the subscriber authorizes the change then his/her list is modified accordingly (step (e)).

This is shown generally in the specification at FIGs. 1-4.  [A080-085] FIG. 1 shows that the subscriber queue 110 may have a list of titles (DDD, EEE, etc.) in a desired priority. The subscriber account (which the queue is a part of) is "monitored" (i.e., titles are suggested for inclusion or removal) based on the parameters 115 given to an electronic agent 120:



FIG. 2 describes a logical hierarchy for the software agent (referred to as a "queue keeper" ) to manage a user's media rental queue, in which four or five basic parameters can be controlled and set for the user:

6



As seen above, the subscriber can control basic rules for monitoring[2] their

accounts such as:

1)    *Does* the user want to use the automated agent to manage their listings?

(FIG. 1, option 117)

---

[2] While the other options shown in FIG. 2 are less relevant here, they include an option #3 (box 230) which permits the user to identify if/how they should be notified of alterations.    [A050] The general operational flow of the "monitoring" after it is set up is identified further in FIG. 4:  "After such initialization steps, a queue monitoring procedure is performed in a loop-like fashion at step 410, again, in accordance with the directives selected by the subscriber, and/or in conjuction with other instructions from a service provider."  See disclosure as filed, page 19, 19-22. [A056]

2)    *When* should the automated agent modify the user's list? (FIG. 2, box 220 top left)

3)    *What* content should the automated agent use to modify the user's list? (FIG. 2 box 250 bottom left)

4)    *How* should the automated agent modify the user's list? (FIG. 2, box 250 bottom left)  The queue is altered based on the SW agent's determination, including replacing/removing items.

[A049 – 053] Of equal importance to the present discussion is the "autorecommend" option shown in box 240, which, as part of "monitoring" the subscriber's account, can use a content filtering algorithm and/or a collaborative filtering algorithm to assess and suggest titles for the subscriber.[3]  These types of algorithms, by their nature, can perform a number of "comparison" operations (even if not explicitly labeled as such) depending on what the inputs and desired outputs are. Here as seen directly in box 240 when considering items (to be added or removed) the recommender of the present disclosure specifically states that it can use the subscriber's prior ratings, rentals, etc. as inputs:

> … the system can also make recommendations for titles to a user using a well-known recommender algorithm.  Such algorithms are commonplace in a number of Internet commerce environments, including at Amazon, CDNOW, and Netflix to name a few.  While the details of such algorithms are often proprietary, the latter typically use a number of parameters for determining a user's movie "tastes" so to speak, including demographics, **prior movie**

---

[3] See e.g., original claim 14. [A077]

8

**rentals, prior movie ratings,** user navigation statistics, comparison with other users, etc.  See page 1, l. 29 – page 2, l. 3 (emphasis added) [A039-040]



These are highlighted (red dashed circle annotations) from the figure above:

…In the present system, **an auto-recommend feature** can be based, for example, **on prior ratings given by a subscriber to certain movies which he/she has seen, and/or just based on the identity if (sic) all prior rentals**.  Śee p.14 ll. 15-17 (emphasis added) [A051]

Appellant submits that the disclosure makes it fairly clear that the "monitoring" step (which uses the autorecommend feature as an option at box 240) can clearly determine a recommended item by comparing existing items in the selection queue to prior ratings for items, prior item rentals, etc.   Stated another way, if a comparison was <u>not</u> being made, it would be impossible for the monitoring/recommendation logic (FIG. 4) to make an assessment or change to the queue as noted in the disclosure – i.e., such as to "replace" one item in favor of another (box 250).

With regard to the <u>adding/removing titles aspect of the claim</u>, this aspect of the invention <u>was set out in the original claims</u> – see below.  It is also referenced in the disclosure as well, including at pp. 12:15-20 [A049]

Furthermore, in some instances **it may be desirable for the system to compare user selections** (which may be identified in a queue with a high priority) against automatically recommended selections (which may be identified with a lower priority but predicted to be more "desirable" to the subscriber) **to see if the latter should "bump" the former in shipping**

9

**priority**.  Again, this serves to improve the overall user experience by ensuring that better quality selections are actually shipped and received.

Other citations were also included in the Appeal Brief as well.[4]

B.    The Prosecution History and Appeal[5]

Claim 1 as <u>originally</u> filed recited:

1.    A method of monitoring a queue maintained by a content provider for a subscriber, the method comprising the steps of:

(a)    setting up a subscriber rental queue for the subscriber, said subscriber rental queue consisting of a list of one or more playable media items desired by the subscriber;

(b)    setting up queue monitoring control rules for the subscriber rental queue; and

(c)    **monitoring said subscriber rental queue** in accordance with said queue monitoring control rules to determine if a change should be made to a composition and/or ordering of said list; and

(d)    **automatically selecting a proposed playable media item to be added to the subscriber rental queue, or removed from the subscriber rental queue;**

(e)    modifying said subscriber rental queue based on an authorization from the subscriber to generate a new list of one or more playable media items in response to the results of steps (c) and (d).  (emphasis added)  [A075]

This claim and claims 2-20 were first rejected in a <u>First Office Action</u> dated

September 18, 2007.   [A093 – A105] An <u>Amendment A and Response</u> was filed on

---

[4] <u>See</u> page 4 of <u>Appeal Brief</u> citing to box 250; page 12, ll. 15 – 20; page 14, l. 29 – page 15, l. 10; FIG. 9 and the discussion at page 31, l. 16 –  page 34, l. 24. [A162]

[5] As only the written description rejection was maintained, the discussion below is abbreviated to refer primarily to this issue.

10

February 19, 2008.  [A106 -  A117] Applicant revised the claims to better clarify that

they covered both selective additions and removal of media items from subscriber

rental queues.  In the remarks Applicant noted:

> "… Applicant now emphasizes in amended element (d) that the invention of
> claim 1 has the capacity to not only automatically select titles to be added, **but
> also to select titles to be removed from the subscriber rental queue**.  This
> type of language was already in limitation (d) before, but to make it more
> apparent it has been elaborated further.  The claim further makes note of the
> fact that the computing system supports both of such functions.   As noted in
> the specification, the intent of this aspect of the invention is to ensure that the
> subscriber's queue is maintained with appropriate titles. Note that Hastings
> clearly says and suggests nothing of automatically determining titles to be
> removed, so this is a clear distinction.  **Moreover the claim makes plain that
> the act of automatically removing titles (element e) is based on
> comparing "…content of playable media items previously selected by
> the subscriber with content of playable media items in said subscriber
> rental queue…"**   In other words, **some of the playable media items in the
> queue may be considered candidates for removal based on past behavior
> by the subscriber**.  This type of operation is disclosed at many places in the
> disclosure, including paragraphs 065-066; 073; 075 and 077; and 096." [A114]

In a second and <u>Final Office Action</u> mailed May 28, 2008, the Examiner

introduced a new written description §112 rejection against claims 1 - 30 in response

to the additional language clarifying how items could be automatically removed.[6]

[A118 – A139]  He noted specifically (annotations added by Appellant):

---

[6] The other rejections, which are not relevant here included a rejection of claims 1 - 30
under § 112 for indefiniteness based on a different grounds than before. Claims 1 – 7,
9, 21, 22, 24 – 28 were rejected as anticipated under § 102(e) based on the Hastings
reference.  Claims 8, 10 – 16, 18 – 20, 23, 29 and 30 were also rejected as obvious
based on the Hastings reference.  Claim 17 was again rejected as obvious based on the
Hastings taken with Elston (6,055,505).

> In the independent claims applicant has recited that the system compares content of a playable media item to content of media items viewed by the subscriber and automatically removes the second playable media item.  Applicant has stated that paragraphs 65,66,73,75,77 and 96 support what is claimed.  The examiner has reviewed these sections and do not see where it has been disclosed that an item is actually removed from the queue based on a comparison step as claimed.  It seems to be disclosed that a title may bump another one as far as shipping order goes but where is there support in the specification as originally filed for the actual removal of the item.

[A120]  Appellant submits that the Examiner here was plainly arguing that the item removal step was not shown in the disclosure - not the comparing step.  This focus of this rejection was reinforced in his Answer (see below).

Appellant appealed these determinations by the Examiner.  [A159-A187] The Appeal Brief specifically pointed out "where" in the disclosure there was support for the claimed limitations.  [A162]  In his Answer mailed 6/29/2009 [A188-A218] the Examiner again reiterated what his contention was for the written description rejection: that there was no "….**support in the specification as originally filed for the actual removal of the item.**"  [A192]  The Answer then contains another 3 separate pages (18 - 21) that are again underlined directly related to the logic of his rejection, and his direct response to the Appellant's Brief.   Here are some excerpts (emphasis added):

> "**The Examiner still takes the position** that the limitation that the **media titles can be automatically removed from a subscriber rental queue** is directed to new matter that **is not supported by the originally filed disclosure**" (see page 18)

12

"**The Examiner does not see how** this portion of the specification somehow supports the argument that the term "bump" **necessarily requires removal of an item**." (see page 19)

"**There is no discussion of any media titles being removed from any queue** as has been argued" (page 20 -referring to embodiment of FIG. 9)

"The Examiner feels that the **term "bump" does not mean necessarily require removal**" (page 19)

"**The examiner still does not find** there to be any support in the specification as originally filed for the notion that **a media title is automatically removed from the queue**." (page 21)

[A206-A209]  In paragraph after paragraph the Examiner repeats the same mantra: he categorically believed (and despite the original claim language expressly saying so) and declared that the disclosure did not show removing titles from the subscriber queue.  Appellant submits that there is simply no room for reasonable debate as to the Examiner's position. He unequivocally asserted that there was no removal of items shown in the disclosure.

The Reply pointed out that the Examiner was trying to apply an overly rigid and narrow definition for certain terms in the specification, such as "bump" and "replace."  [A219 – A224]  Appellant further noted that the Examiner was using the wrong test, because his analysis was fixated on trying to argue why one part of the disclosure did not show the limitation to his liking, rather than considering the specification as a whole.

The Board found in Appellant's favor on every issue save for the written description rejection.  Even as to that point, however, the Board acknowledged that

the Examiner was clearly <u>incorrect</u> to suggest that the claimed "removal" of items was not disclosed.  [A223]  They pointed out particularly the presence of this precise limitation in the original claim, so in their opinion, it could <u>not</u> have been the proper subject of a written description rejection.

 That should have been the end of the mater. But in what can only be considered a "charitable" interpretation, the Board went on to suggest that the Examiner had not <u>really</u> made a rejection based on the lack of a title being removed, but, rather, was really arguing the lack of the second part of the limitation, namely the "comparing" step language.   [A010]  The Board's support for this characterization of the Examiner's rejection is based solely on their selective citation and unexplained emphasis of <u>a portion of the actual rejection language</u> in the Office Action.

Appellant then filed a request for reconsideration pointing out the errors above. This request was denied, with the Board insisting that it had properly construed the Examiner's rationale for his holding.  [A024 – A032] In response to Appellant's citations on the record concerning the support for the language of the claims, the Board held (among other things):

> The **Appellant is correct** that **the Appeal Brief provided a summary of the claimed subject matter which indicated that the claim limitation at issue was described** at p. 12, ll. 12-20. Req. 3 (citing App. Br. 4) **But this disclosure was not included or mentioned in any part of any argument** challenging the Examiner's position.  [A029]

14

The Board thus concluded that it did not have to consider address the evidence supplied by the Appellant in the Brief, because they declared it was not in the "argument" section of the brief.

## VI.    SUMMARY OF THE ARGUMENT

A patent applicant is "obligated to respond to…[a] written description rejection…by explaining where in the specification support for each of [the] limitations [can] be found." Hyatt v. Doll, 576 F.3d 1246, 1274 (Fed. Cir. 2009), citing In re Alton, 76 F.3d 1168, 1175 (Fed. Cir. 1996).  That is exactly what Appellant did in the Appeal Brief and in the Reply Brief.

The main issue here should be whether Appellant responded in full to the actual written description rejection made by the Examiner, because Appellant could not have predicted or addressed the revised interpretation of the rejection proposed by the Board in its opinion.  Appellant submits that the evidence is simply overwhelming (see above) that the Examiner's "contention" was that there was no "item removal" shown in the disclosure, not that there was no "comparing" operation as the Board contends.

Since the Board categorically rejected the Examiner's contention that the disclosure did not show items being removed, this should have resolved the last issue in Appellant's favor.  The Board's attempt to rehabilitate or reframe the rejection set out in black and white should be rejected.  There is nothing on the record, other than

15

the Board's "highlighting" of a portion of the Examiner's rejection to support the finding that the Examiner was instead challenging the "comparing" language in the claim.

Nonetheless it is clear that even with the Board's reformulation of the rejection, and without a formal opportunity to respond, the Appellant still provided ample support for the claimed limitations. The figures and disclosure show several controls, permutations, etc., of controlling the subscriber's queue, including through removing titles, based on examining prior behavior and current selections. The Board was not free to ignore (as it implied in the Reconsideration Decision) this evidence - in contravention of the plain directions of 37 C.F.R. §41.37 - simply because it was not wholesale repeated again in the "Argument" section of the Briefs.

## VII.   ARGUMENT

### A.      Standard of Review

The Board's underlying <u>factual</u> findings are reviewed for substantial evidence. <u>In re McNeil-PPC, Inc.</u>, 574 F.3d 1393, 1398-99 (Fed. Cir. 2009). <u>In re Owens</u>, 710 F.3d 1362, 1366 (Fed. Cir. 2013) ("Whether a claimed invention is supported by an adequate written description under § 112, ¶ 1, is a question of fact that we review for substantial evidence.")

"Compliance with the written description requirement is a question of fact." <u>ICU Med., Inc. v. Alaris Med. Sys., Inc.</u>, 558 F.3d 1368, 1376 (Fed. Cir. 2009). In

16

order to meet the written description requirement, Appellants do not have to utilize any particular form of disclosure to describe the subject matter claimed, but "the description must clearly allow persons of ordinary skill in the art to recognize that [he or she] invented what is claimed." In re Gosteli, 872 F.2d 1008, 1012 (Fed. Cir. 1989). Put another way, "the applicant must . . . convey with reasonable clarity to those skilled in the art that, as of the filing date sought, he or she was in possession of the invention." Vas-Cath, Inc. v. Mahurkar, 935 F.2d 1555, 1563-64 (Fed. Cir. 1991) (emphasis in original). Finally, "[p]recisely how close the original description must come to comply with the description requirement of § 112 must be determined on a case-by-case basis." Eiselstein v. Frank, 52 F.3d 1035, 1039 (Fed. Cir. 1995) (quoting Vas-Cath, 935 F.2d at 1561).

### B.    The Board Decision is Error On Multiple Grounds

The Board erred in at least three different ways:

1) There is no substantial evidence to support the actual written description rejection made by the Examiner;

2) The Board's re-write of the Examiner's rationale into an alternative written description rejection is both unsupported by the record and improper as a matter of jurisdictional authority;

3) The Board failed to consider the substantial evidence presented by Appellant against the alternative written description rejection;

These points are elaborated further below. Appellant respectfully requests

reversal of the remaining rejections of the present application.

      1.     The PTAB Erred In Affirming The Examiner's Rationale For The
Written Description Rejection


As set out above in painstaking detail, the Examiner's "written description"

rejection was clearly and repeatedly articulated as this: there was no teaching of "items

being removed" from the subscriber queues.  See <u>e.g.</u> (emphasis added);

> "….where is there support in the specification as originally filed **for the actual removal of the item**." Answer page 4 [A192]

> "The Examiner still takes the position that **the limitation that the media titles can be automatically removed from a subscriber rental queue is directed to new matter that is not supported by the originally filed disclosure**" (see Answer page 18) [A206]

> "The Examiner **does not see how** this portion of the specification somehow supports the argument that **the term "bump" necessarily requires removal of an item.**" (see Answer page 19) [A207]

> "**There is no discussion of any media titles being removed from any queue** as has been argued" (Answer page 20 -referring to embodiment of FIG. 9) [A208]

> The Examiner feels that **the term "bump" does not mean necessarily require removal** (Answer page 19) [A207]

> The examiner still **does not find there to be any support** in the specification as originally filed for the notion **that a media title is automatically removed from the queue**." (Answer page 21) [A209]

Appellant submits that given this clear record – consisting of consistent,

unequivocal repeated articulations - reasonable minds cannot differ about what the

Examiner's thinking was for this rejection.   He <u>categorically</u> disputed that the disclosure showed removal of items from a queue. The "Response" (section 10 of the Answer) clarifies and leaves no doubt on the substance of the rejection of record.[7]

Evidence is substantial "if a reasonable mind might accept it as adequate to support the finding." <u>In re Adler</u>, 723 F.3d 1322, 1325 (Fed. Cir. 2013).  Appellants submit that there is simply no "substantial evidence" that can support <u>this</u> rejection. In fact, as the Court can plainly see, the PTAB explicitly found this rejection untenable:

> "…the Examiner **could not have taken that position** because the automatic removal of a title from a subscriber rental queue was originally claimed."  See 8/19/2013 PTAB Decision page 9. [A010] (emphasis added)

The Board's holding should have been the end of the matter, because, despite their incredulity, that is precisely what the Examiner insisted here.  While somewhat superfluous - given the Board's express finding above in its favor - it should be noted that Appellants similarly provided substantial citations from the specification to counter the Examiner's contention that items were not also shown as being removed. In addition to original claim 1's express recitation (see above) Appellant further explained that certain terms (bump and replace for example) and functions (swapping titles) would be understood by skilled artisans in their common useage to "remove"

---

[7] Conversely, he said little to nothing about the "comparing" aspect of the claim, because he was well aware (see below) that such operations were well disclosed and attendant to many features disclosed in the specification.

items from the subscriber wish lists.  <u>See</u> Appeal Brief at pp 10 – 11 [A168-169] and

Reply Brief at pp. 3 – 6.  [A221 – A224]  The Board's opinion unqualifiedly agrees

with these conclusions.[8]

      2.     The PTAB Erred In Re-Writing The Written Description
            Rejection

The Board's error here is that it mistakenly presumed too much about the logic

or rationale that went into the only remaining rejection.  Given the massive errors

reversed in the rest of the decision, the Board should have been alerted that this

remaining rejection was likely also not well thought out or supported.

The Board thus tried to remediate the written description rejection by casting it

differently:

> Rather, the Examiner has taken the position that the Specification
> does not disclose "an item is actually removed from the queue <u>based on a</u>
> <u>comparison step</u> as claimed." Ans. 4 (emphasis added). "[U]pon an
> electronic text search of the specification the words compare or comparing
> or compared to not appear in conjunction with remove or removal or
> removed." Ans. 5.

[A010]  The Board *unilaterally* decided that it should highlight and emphasize

the "…<u>based on a comparison step</u>" language.  This new emphasis is completely

---

[8] The Board's decision on Reconsideration reveals that it is still confused about what
the Examiner was arguing.  On the top of page 6 [A030] they quote the Examiner's
argument, and then demand to know why Appellant did not refute the rejection of the
"comparison" limitation: the answer is simple: the Examiner made no such rejection.
As this Court can read in the language quoted by the Board, he never once mentions
the "comparison" step, only his objection to the "item removal."

arbitrary, and tellingly they never mention or cite to the several pages of rebuttal/elaboration by the Examiner in his Answer (see above) on the gist of the rejection of record.   The only citation they provide is the Examiner's statement that, again, he could not find the words "compare or comparing" in conjunction with "remove or removal or removed."  Again, however this statement, read in context, does not change the thrust or focus of the Examiner's argument: namely that he contended there was no "removal" of items anywhere in the specification.

The Board's attempt to rehabilitate or reframe the rejection set out in black and white should be rejected.[9]  There is nothing on the record, other than the Board's "highlighting" of a portion of the Examiner's rejection to support the finding that the Examiner was instead separately challenging the "comparing" language in the claim.

3.    The PTAB Erred In Ignoring The "Summary of Claimed Subject Matter" Set Out In the Brief Which Identified Support For the Claims

As the Court is well aware, Appellants are <u>required</u> by PTAB rules to file a "Summary of Claimed Subject Matter" as part of any Appeal Brief, which identifies support for the claim limitations in the disclosure:  <u>See</u> 37 C.F.R. 41.37:

---

[9] Appellant submits that the BPAI clearly re-characterized the Examiner's position, and thus changed the rejection so much that Appellant did not have the opportunity to respond to the new thrust of the rejection.   <u>In re Leithem</u>, 661 F.3d 1316, 1321 (Fed. Cir. 2011) Appellant does not seek a mere remand however of the appeal to the USPTO to designate it as a new ground of rejection because the issue is already fully briefed and he has suffered enough delays that he would like this issue resolved now. Nonetheless he appreciates that such action is not beyond the power of this Court given the present record.

… (iii) Summary of claimed subject matter. A concise explanation of the subject matter defined in each of the rejected independent claims, **which shall refer to the specification in the Record by page and line number or by paragraph number, and to the drawing, if any, by reference characters**.

[69 FR 50003, Aug. 12, 2004, as amended at 76 FR 72297, Nov. 22, 2011]

Appellants included such section as required by the Rules, pointing out for example that limitation (d) had support in several areas of the disclosure, including FIG. 4; steps 410 – 495, and discussion at page 18, l. 27 – page 21, l. 22; box 250; page 12, ll. 15 – 20; page 14, l. 29 – page 15, l. 10; FIG. 9 and the discussion at page 31, l. 16 – page 34, l. 24, and particularly page 12, ll. 12-20.  See Appeal Brief, p. 4 [A162]

When Appellants pointed out to the PTAB that they had ignored this section of the Brief [A238-241] the panel admitted such, but then blithely stated "…this disclosure was not included or mentioned in any part of any argument challenging the Examiner's position.  The Board could not have overlooked *what was not presented to it*." Reconsideration Decision dated 2/3/2015, page 5 (emphasis added).  [A029] The Board then unabashedly declared that it did not consider Appellant's evidence, because it was not required to do so:

> "The argument now being advanced was not before the Board and because it was not before the Board, the Board could not have overlooked it in  reaching its Decision."  [A032]

Appellants submit that the PTAB is clearly in error in stating that some parts of an Appeal Brief may be considered, while others of their choosing (including the

"Summary of Claimed Subject Matter") may be ignored at their discretion.[10] 37 C.F.R.

§41.37(c)(1)(iv) states:

> ….Except as provided for in §§ 41.41, 41.47 and 41.52, any arguments or authorities **not included in the appeal brief** will be refused consideration by the Board for purposes of the present appeal. (emphasis added)

The Regulations contain no hint or suggestion that a "Brief" will not be

considered in its entirety; nor do they qualify that arguments not included in the

"Arguments" section may be ignored.  Furthermore the PTAB routinely rejects briefs

as "non-compliant" if they do <u>not</u> include the Summary section.  <u>See</u> 37 C.F.R.

41.37(d).  Appellants submit that under the current regulatory framework, the PTAB

is simply not free to pick and choose which sections it will consider from a brief,

while simultaneously penalizing Appellants who do not conform with such filing

requirements.

The PTAB opinion is arbitrary and capricious in this respect, violates 37 C.F.R.

§41.37, and elevates form over substance. Appellant submits that this holding is

---

[10] Appellant suspects the PTAB attempted to void any weight given to the <u>Summary of Claimed Subject Matter</u> because the Examiner had already <u>agreed</u> that this section, describing the support in the specification for the claims, was indeed "correct." <u>See</u> Answer, page 2, ¶5. [A190] While Appellant did not advance this express Examiner acknowledgement in the Reply, the Board may have been concerned of its potential importance as a <u>limited waiver</u> on the issue, and for this reason declared that this portion of Appellant's brief was "out of bounds" so to speak.  Appellants note from experience that in many appeals an Examiner confirms review of the Summary, but will simply indicate that they have <u>no</u> comment.  Here the Examiner – for better or worse - acknowledged reviewing the cited support and chose to confirm that it was in fact "correct," even if it was not his intention to do so.

invalid under the Administrative Procedure Act (5 U.S.C. § 706), a standard to which all actions by the USPTO must adhere (see <u>Dickenson v. Zurko</u>, 527 U.S. 150 (1999)).

Furthermore Appellants submit that if this Court is going to adopt such logic, it must craft it narrowly to the particular circumstances. Here, when the rejection is based on the adequacy of the disclosure, those particular sections of an Appeal Brief that are required to focus on such topic must surely be considered as well.[11]

4. There Is Ample Written Description For the "Comparing" and Then Removing Steps

a) *The Board Disregarded Passages Describing Item "Bumping" (Which Encompasses Removal) With The "Comparing" Operation*

Even with the Board's reformulation of the rejection, the Appellant provided ample support for the claimed limitations. The Board's decision is simply wrong when it asserts that the citations from the <u>Summary of Claimed Subject Matter</u> were not used in the "Argument" section of the Brief. They most certainly were, and Appellant in fact quoted one of the more relevant sections on this point:

> Furthermore, in some instances it may be desirable for the system **to compare user selections** (which may be identified in a queue with a high priority) against automatically recommended selections (which may be identified with a lower priority but predicted to be more "desirable" to the subscriber) **to see if the latter should "bump" the former in shipping priority**. <u>See</u> Appeal Brief at p. 11 [A169]

---

[11] Appellant submits that embracing this logic will simply motivate future filers to include a catch-all statement in the "Arguments" section which recites "all other portions of this Brief are incorporated by reference in this section of the Brief" or similar cluttering, substance-free verbiage.

An objective standard for determining compliance with the written description requirement is, "does the description clearly allow persons of ordinary skill in the art to recognize that he or she invented what is claimed." In re Gosteli, 872 F.2d 1008, 1012, 10 USPQ2d 1614, 1618 (Fed. Cir. 1989).   Appellant pointed out that the above section was an explicit example of the disclosure mentioning that a "comparing" step could result in "bumping" or replacing (see FIG. 2) of titles, with one instance meaning switching priorities.[12]   Appellant then went on to provide examples of how the term "bumping" clearly had a broader connotation than that used by the Examiner, particularly in light of other parts of the disclosure,[13] so the description above – combined with the myriad of other options presented as control parameters - would provide reasonable clarity to a skilled artisan that a variety of possibilities were encompassed based on the comparison, including complete removal.  See Reply Brief, pp. 3-4.  [A221-A222]  Box 250 further shows "replacing" titles as one action to be

---

[12] The Board again confuses the Examiner's purpose in using this section of the disclosure. The Examiner was attempting to prove a point about the *entirety* of the disclosure, based on his (incorrect) interpretation of this *isolated* section of the specification: namely, to argue that there were no titles removed.   Since the Board already agrees that this is not true, it should have similarly disregarded the Examiner's further extrapolation.

[13] Appellant pointed out FIG.9 for example, in which subscribers swap titles, an operation which clearly "removes" titles from queues, and which is based on a "comparison" - namely the system comparing titles in the subscribers' accounts to see if person A wants title X from person B, resulting in removal of such item from person A's account.  See Appeal Brief at p. 10 [A168] and Reply Brief at pp. 5-6 [A223]

taken, a term again that would be clearly understood to encompass a result of a "removal" of one title.

Because the Board agreed with the Appellant that this language (and other language) was broad enough to cover "removing" of titles, and this cited section of the disclosure specifically recites the "comparison" operation that the Board felt was important, the rejection should have been reversed. However, as noted above, the Board did not do so, in large part due to their (arbitrary and improper) holding that they did not have to consider this section of the Brief.

> b)    *The Disclosure Also Shows "Comparing" as part of "Monitoring" And Thus Part of "Removing" as Well*

The Board isolated limitation (d) and concluded that there was no "removing" of titles done based on a "comparison" of some kind. This was improper and resulted in the claim language being read out of context.

The Board here simply failed to appreciate the interaction of the steps in claim 1, in which step (c) first calls for "monitoring" of the subscriber's queue to



"determine" if a change should be made. As the specification points out, this queue change determination is made by an "auto recommend" electronic agent which is controlled by parameters set out in box 240:

The parameters used by the "auto recommend" logic (see top left hand check box) include a determination in which the subscriber's "selection queue" titles can be compared to subscriber's "prior rentals" or "prior ratings" (set top right hand boxes).

The specification also notes that: "…In the present system, an auto-recommend feature can be based, for example, on prior ratings given by a subscriber to certain movies which he/she has seen, and/or just based on the identity of all prior rentals." See Specification 14:15-18 [A051]

Thus, the Board ignored all the cited evidence in the Appeal Brief, including the specification, figures and claim language which clearly set out that the <u>auto recommend</u> logic (incorporated in limitation (c) and (d)(2)) uses some form of comparison to determine what to propose adding/removing from the user's selection queue. This is also inherent of course in the types of recommender systems described in the specification, as they compare users to users, or items to items.

This operation of the auto recommend feature was noted in <u>original claim 1</u> as well a title being added or removed to the subscriber queue as a result of the recommender determination. <u>See</u> above.  Therefore, the main change to claim 1 was the further clarification that the additions/removals were made <u>based on comparisons of prior items to the user's existing queue selections,</u> which is set out  in box 240. Shown below is a demonstrative constructed from the disclosure by the Appellant to better illustrate the features of the claim for the benefit of the Court:



A subscriber has an account, and a selection queue, with a number of items, including a title Z ("second item").   The user's account or queue is monitored (step c) during which (step (d)) an auto recommender system determines if an item should be added to (New Title A) or removed from (Existing Title Z) the subscriber's queue.

This "monitoring" step of the subscribers rental queue in turn implicates a number of operations mentioned in the disclosure, including considering what items the user has in his/her queue, which items the user has rated before, which items the user has rented before, and so on.[14]   Thus, as the limitation in question in claim 1 recites:

---

[14] The operation of the <u>auto recommender</u> logic incorporated as part of the monitoring here is summarized at page 1, l. 29 – page 2, l. 3: "…the system can also make recommendations for titles to a user using a well-known recommender

…further wherein at least for step (d)(2) said monitoring (*auto recommender logic 240 part of FIGs 2, 4*) compares content of playable media items previously selected by the subscriber (*STAR marked #1*) with content of playable media items in said subscriber rental queue (*STAR marked #2*), including said second proposed playable media item, to determine if said second proposed playable media item should be removed…

Appellant submits that the operation of the auto recommender logic, as described in FIGs. 2 and 4 and in the specification, would be clearly understood by a skilled artisan to be "comparing" current/prior content as part of the monitoring. Recommenders (including those described in the specification) are well-known to *rank* items for users to make *predictions*,[15] which is plainly just another form of "comparing" as set out in the claims.

As discussed above also, the logic shown in FIGs. 2 and 4 is comprehensive and shows a huge number of permutations for controlling when, how and with what a subscriber's account is changed.  This description, particularly when combined with the original claims, is more than enough to impart reasonable clarity to a skilled artisan that the inventor was in possession of the subject matter of claim 1 (and the other rejected claims reciting similar limitations).

---

algorithm.  … While the details of such algorithms are often proprietary, the latter typically use a number of parameters for determining a user's movie "tastes" so to speak, including demographics, *prior movie rentals, prior movie ratings*, user navigation statistics, comparison with other users, etc." (emphasis added) [A038-A039]

[15] "A variety of artificial intelligence, or preference determination systems are known in the art *for predicting preferences* of individuals.  These systems work based on such simple factors as demographics, *prior selections*, expressed preferences, questionnaires, etc."  See <u>specification</u> at page 14, ll. 10-14 [A051]

In sum, the Board erred by failing to consider the claim as a whole, including the interaction of the various steps.  In doing so, it ignored those aspects of the disclosure that pertained to element (c) as well, including the operation of the monitoring routine and auto recommend logic which was responsible for determinging titles to be added or removed.  Despite the fact that Appellant was not apprised of this "new" challenge by the Board, and could not have addressed it fully, Appellant submits that there was already ample support on the record to rebut the new written description rejection.

## VIII.  CONCLUSION AND STATEMENT OF RELIEF SOUGHT

Based on the above arguments and conclusions Appellant respectfully requests reversal of the Board's decision which sustains a written description rejection of claims 1-30 not actually made by the Examiner.

Respectfully submitted,

J. Nicholas Gross

September 22, 2014

Law Office of J. Nicholas Gross, P.C.
PO Box 9489
Berkeley, CA 94709
510-540-6300
510-540-6315 (fax)

# **ADDENDUM**

PTAB ORIGINAL DECISION (8/19/2013)

PTAB DECISION ON RECONSIDERATION (2/3/2014)



# UNITED STATES PATENT AND TRADEMARK OFFICE

UNITED STATES DEPARTMENT OF COMMERCE
United States Patent and Trademark Office
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 10/770,767 | 02/02/2004 | John N. Gross | JNG 2004-3 | 1622 |

52447          7590          08/19/2013

PATENTBEST
1195 Park Avenue
Suite 202A
EMERYVILLE, CA 94608

| EXAMINER |
|---|
| RUHL, DENNIS WILLIAM |

| ART UNIT | PAPER NUMBER |
|---|---|
| 3689 | |

| MAIL DATE | DELIVERY MODE |
|---|---|
| 08/19/2013 | PAPER |

**Please find below and/or attached an Office communication concerning this application or proceeding.**

The time period for reply, if any, is set in the attached communication.

PTOL-90A (Rev. 04/07)

A001

UNITED STATES PATENT AND TRADEMARK OFFICE

————————

BEFORE THE PATENT TRIAL AND APPEAL BOARD

————————

*Ex parte* JOHN N. GROSS

————————

Appeal 2010-004101
Application 10/770,767
Technology Center 3600

————————

Before HUBERT C. LORIN, ANTON W. FETTING, and
BIBHU R. MOHANTY, *Administrative Patent Judges*.

LORIN, *Administrative Patent Judge*.

DECISION ON APPEAL

STATEMENT OF THE CASE

John N. Gross (Appellant) seeks our review under 35 U.S.C. § 134 of

the final rejection of claims 1-30. We have jurisdiction under 35 U.S.C.

§ 6(b) (2002).

Appeal 2010-004101
Application 10/770,767

SUMMARY OF DECISION

We AFFIRM.[1]

THE INVENTION

Claim 1, reproduced below, is illustrative of the subject matter on appeal.

1. A method of monitoring a queue maintained by a content provider for a subscriber, the method comprising the steps of:

(a) setting up a subscriber rental queue for the subscriber on a computing system, said subscriber rental queue consisting of a list of one or more playable media items desired by the subscriber;

(b) setting up queue monitoring control rules on said computing system for the subscriber rental queue; and

(c) automatically monitoring said subscriber rental queue with said computing system in accordance with said queue monitoring control rules to determine if a change should be made to a composition and/or ordering of said list;

(d) based on the results of step (c) performing a step with the computing system of:

1) automatically selecting a first proposed playable media item to be added to the subscriber rental queue; and/or 2) automatically selecting a second proposed playable media item to be removed from the subscriber rental queue;

wherein the computing system supports both steps (d)(1) and d(2);

---

[1] Our decision will make reference to the Appellant's Appeal Brief ("App. Br.," filed Mar. 25, 2009) and Reply Brief ("Reply Br.," filed Aug. 24, 2009), and the Examiner's Answer ("Ans.," mailed Jun. 22, 2009).

2

Appeal 2010-004101
Application 10/770,767

> further wherein at least for step (d)(2) said monitoring
> compares content of playable media items previously selected by the
> subscriber with content of playable media items in said subscriber
> rental queue, including said second proposed playable media item, to
> determine if said second proposed playable media item should be
> removed;

> (e) modifying said subscriber rental queue with the computing
> system based on an authorization from the subscriber to generate a
> new ordered list of one or more playable media items in response to
> the results of steps (c) and (d);

> wherein at least some playable media items including said
> second proposed playable media item can be automatically
> removed by the computing system for the subscriber from said
> subscriber rental queue in response to said authorization.

## THE REJECTIONS

The Examiner relies upon the following as evidence of

unpatentability:

| | | |
|---|---|---|
| Elston | US 6,055,505 | Apr. 25, 2000 |
| Hastings | US 6,584,450 B1 | Jun. 24, 2003 |

The following rejections are before us for review:

1. Claims 1-30 are rejected under 35 U.S.C. § 112, first paragraph, as
   failing to comply with the written description requirement.

2. Claims 1-30 are rejected under 35 U.S.C. § 112, second paragraph, as
   being indefinite for failing to particularly point out and distinctly
   claim the subject matter which applicant regards as the invention.

3. Claims 1-7, 9, 21, 22, and 24-28 are rejected under 35 U.S.C. § 102(e)
   as being anticipated by Hastings.

3

4. Claims 8, 10-16, 18-20, 23, 29, and 30 are rejected under 35 U.S.C.
   § 103(a) as being unpatentable over Hastings.

5. Claim 17 is rejected under 35 U.S.C. § 103(a) as being unpatentable
   over Hastings and Elston.

## ISSUES

The first issue is whether the Specification "convey[s] with reasonable clarity to those skilled in the art that, as of the filing date sought, [that the inventor] was in possession of the invention [as claimed]." *Vas-Cath Inc. v. Mahurkar*, 935 F.2d 1555, 1563-64 (Fed. Cir. 1991). In that regard, has the Appellant shown the Examiner to be in error in concluding that the Specification fails to provide adequate written descriptive support for the subject matter of claims 1-30 in compliance with 35 U.S.C. § 112, first paragraph?

The second issue is whether the Examiner has made out a prima facie case of indefiniteness under 35 U.S.C. § 112, first paragraph. Has the Examiner made the case that the claims are so unclear as to fail to "particularly point[ ] out and distinctly claim[ ] the subject matter which the applicant regards as his invention" (35 U.S.C. § 112 ¶ 2)?

The third issue is: did the Examiner make out a prima facie case of anticipation in the first instance for the subject matter of independent claim 1 and claims dependent thereon?

The fourth issue is whether the Examiner has made out a prima facie case of obviousness in the first instance for the subject matter of independent claims 10 and 11 and claims dependent thereon.

4

Appeal 2010-004101
Application 10/770,767

## FINDINGS OF FACT

We find that the following enumerated findings of fact (FF) are supported by at least a preponderance of the evidence. *Ethicon, Inc. v. Quigg*, 849 F.2d 1422, 1427 (Fed. Cir. 1988) (explaining the general evidentiary standard for proceedings before the Office).

1. The Specification states: "The Internet is now being used for a number of commercial purposes, including purchase and rental of movie films in different media formats. One such popular website is maintained by Netflix®, where subscribers can search, review and select movie titles (in DVD media format). If a particular title is available, the subscriber's choice is then placed into a rental selection "queue." During an interactive online session, a subscriber can select a number of titles, and then prioritize them in a desired order for shipment within the selection queue." Specification 1:21-27.

2. Hastings describes that conventional rental models require a customer to go to a video rental store to rent movies and that new release movies are generally due back the next day. (Col. 1, ll. 12-19.)

3. In the Hastings method, "[i]n general, the decision of what items to rent is separated from the decision of when to rent the items." (Col. 4, ll. 7-8.)

4. The decision of what items to rent is a matter of "item selection criteria." A customer provides one or more item selection criteria to the provider indicative of the particular items the customer desires to rent from the provider. "Item selection criteria may specify any type of item attributes and the invention is not limited to particular item attributes. Examples of item attributes include, without limitation, identifier attributes, type

5

Appeal 2010-004101
Application 10/770,767

attributes and cost attributes. Item selection criteria may be changed at
any time to reflect changes in items that customers desire to rent from a
provider." Col. 4, ll. 60-64. The items selected are placed into a
customer's order queue by the provider.

5. "As used [in Hastings], the term "items" refers to any commercial goods
   that can be rented to customers. Examples of items include movies,
   music and games stored on a non-volatile memory such as a tape, other
   magnetic medium, optical medium, read-only memory or the like, and
   the invention is not limited to any particular type of item." (Col. 4, ll. 1-
   7.)

6. Via the Hastings method, customers enter into a rental agreement with
   the provider to rent items from the provider. (Col. 8, ll. 23-24). Once
   customers and the provider have entered into a rental agreement and
   customers have made item selection criteria, then items are rented to
   customers over delivery channels "in accordance with the terms of the
   rental agreement." (Col. 8, l. 66 – col. 9, l. 3).

7. The Internet can be the delivery channel. (Col. 3, ll. 37-39.)

8. In one embodiment, customers enter into a rental agreement with the
   provider to rent items from provider according to "MAX OUT" and/or
   "MAX TURNS" approaches.

9. The "MAX OUT" approach allows a customer to simultaneously rent out
   a specified number of items.  (Col. 4, ll. 35-37.)

10. The MAX OUT limit can be increased to allow additional items to be
    immediately mailed to the customer. (Col. 11, ll. 5-9.)

11. The "MAX TURNS" approach allows a customer to exchange up to a

6

Appeal 2010-004101
Application 10/770,767

specified number of item during a specified time period. (Col. 4, ll. 37-40.)

12. The MAX TURNS limit can be overridden to allow more exchanges during the current cycle. (Col. 10, ll. 55-57.)

13. The "MAX TURNS" approach and the "MAX OUT" approach can be used together. (Col. 4, ll. 40-42.)

14. This combination of approaches is illustrated in Figure 6 of Hastings, reproduced below.



Figure 6 illustrates a method of illustrating using both the "MAX OUT" and "MAX TURNS" approach.

7

A008

Appeal 2010-004101
Application 10/770,767

15. In accordance with the process illustrated in Fig. 6, the customer first
    sets selection criteria specifying the items a provider provides to a
    customer's order queue. (Col. 4, ll. 64-66.)

16. The customer then rents out the items from the order queue to a MAX
    OUT limit.

17. As the customer returns movies, additional movies from the order queue
    are sent to the customer up to the MAX OUT limit. (Col. 10, ll. 30-33.)

18. The customer may exchange up to a specified number of item during a
    specified time period up to a MAX TURNS limit.

19. For example, if the rental agreement sets the MAX TURNS and MAX
    OUT limits to four, "a determination is made whether four or more
    movies have been mailed in the current month. If not, then ... additional
    movies [ ] are mailed to customer ... to the "Max Out" limit of four." Col.
    10, ll. 47-51.

20. There is no evidence on record of secondary considerations of
    nonobviousness for our consideration.


ANALYSIS

*The rejection of claims 1-30 under 35 U.S.C. § 112, first paragraph, as
failing to comply with the written description requirement.*

  The Appellant has not shown the Examiner to be in error in
concluding that the Specification fails to provide adequate written
descriptive support for the subject matter of claims 1-30 in compliance with
35 U.S.C. § 112, first paragraph.

A009

Appeal 2010-004101
Application 10/770,767

The Appellant argues that the Specification reasonably conveys that, at the time of the invention, the applicant had possession of the limitation that "titles can be automatically removed from a subscriber rental queue" (Reply Br. 3). The Appellant criticizes the Examiner: "[w]hen presented with other examples of where titles are in fact automatically removed from the subscriber queues, the Examiner elects to ignore the cited sections and instead focus on a selected area that he thinks supports his perspective." Reply Br. 4.

However, the Examiner is not taking the position that the Specification fails to reasonably convey that, at the time of the invention, the applicant had possession of the limitation that titles can be automatically removed from a subscriber rental queue. In fact, the Examiner could not have taken that position because the automatic removal of a title from a subscriber rental queue was originally claimed. It would have been contrary to the Examiner's "new matter" rejection. See Ans. 4.

Rather, the Examiner has taken the position that the Specification does not disclose "an item is actually removed from the queue based on a comparison step as claimed." Ans. 4 (emphasis added). "[U]pon an electronic text search of the specification the words compare or comparing or compared to not appear in conjunction with remove or removal or removed." Ans. 5.

Since the Appellant has not addressed the Examiner's position, the Appellant has not shown the Examiner to be in error in concluding that the Specification fails to provide adequate written descriptive support for the subject matter of claims 1-30 in compliance with 35 U.S.C. § 112, first

9

Appeal 2010-004101
Application 10/770,767

paragraph. The rejection is sustained.

*The rejection of claims 1-30 under 35 U.S.C. § 112, second paragraph, as being indefinite for failing to particularly point out and distinctly claim the subject matter which applicant regards as the invention.*

The Examiner finds the claims are unclear and therefrom concludes they are indefinite. Claims specifically addressed are claims 1 (Ans. 5-6), 5 (Ans. 5), 22-24 (Ans. 6-7), 27 and 28 (Ans. 7), 10 (Ans. 7-8), 29-30 (Ans. 8), and 11 (Ans. 8-9).

The difficulty with the Examiner's indefiniteness conclusion is that the analysis is not based on any construction of the claims. "That [indefiniteness] determination requires a construction of the claims according to the familiar canons of claim construction. Only after a thorough attempt to understand the meaning of a claim has failed to resolve material ambiguities can one conclude that the claim is invalid for indefiniteness." *All Dental Prodx LLC v. Advantage Dental Prods. Inc.,* 309 F.3d 774 (Fed. Cir. 2002).

The definiteness of claim 1 is challenged on the grounds that steps (d) and (e) are unclear.

Steps (d) and (e) are:

(d) based on the results of step (c) performing a step with the computing system of:

      1) automatically selecting a first proposed playable media item to be added to the subscriber rental queue; and/or 2) automatically selecting a second proposed playable media item to be removed from the subscriber rental queue;

      wherein the computing system supports both steps (d)(1) and d(2);

      further wherein at least for step (d)(2) said monitoring compares content of playable media items previously selected

10

Appeal 2010-004101
Application 10/770,767

> by the subscriber with content of playable media items in said
> subscriber rental queue, including said second proposed
> playable media item, to determine if said second proposed
> playable media item should be removed;

(e) modifying said subscriber rental queue with the computing system
based on an authorization from the subscriber to generate a new
ordered list of one or more playable media items in response to the
results of steps (c) and (d);

> > wherein at least some playable media items including
> > said second proposed playable media item can be
> > automatically removed by the computing system for the
> > subscriber from said subscriber rental queue in response
> > to said authorization.

Step (d) is "based on the results of step (c)". Step (c) calls for
"automatically monitoring [a] subscriber rental queue with [a] computing
system in accordance with [ ] queue monitoring control rules to determine if
a change should be made to a composition and/or ordering of [a] list." The
queue monitoring control rules that are used to determine if a change should
be made to a composition and/or ordering of a list are not specifically
defined. Step (b) provides for "setting up queue monitoring control rules on
said computing system for the subscriber rental queue" but nothing more is
said. Accordingly, the queue monitoring control rules are very broad in
scope. As long as a rule monitors a queue to determine if a change should be
made to the composition and/or ordering of a list in the queue, the claim
covers it. The result of step (c) is either that a change should be made to the
composition and/or ordering of the list in the queue or not.

Step (d) takes the result of step (c) — i.e., that a change should be made
to the composition and/or ordering of the list in the queue or not — and "1)
automatically select[s] a first proposed playable media item to be added to

11

Appeal 2010-004101
Application 10/770,767

the subscriber rental queue; and/or 2) automatically selecting a second proposed playable media item to be removed from the subscriber rental queue ... further wherein at least for step (d)(2) said monitoring compares content of playable media items previously selected by the subscriber with content of playable media items in said subscriber rental queue, including said second proposed playable media item, to determine if said second proposed playable media item should be removed." Step (d) necessarily follows a step (c) determination that a change *should be made* to the composition and/or ordering of the list in the queue. However, nothing in the the claim precludes performing step (d) if a determination is made that a change should *not* be made to the composition and/or ordering of the list in the queue. Accordingly, the claim is broad on that point, too.

As far as steps (d)(1) and (d)(2) are concerned, they broadly call for selecting a first proposed playable media item to be added to the subscriber rental queue [step (d)(1)] and/or selecting a second proposed playable media item to be removed from the subscriber rental queue [step (d)(2)]. Thus the process presumes the prior existence of two items: one which could be added to the queue and one which could be removed from the queue. So, in accordance with steps (d)(1) and (d)(2), once a determination has been made that a change should or should not be made to the composition and/or ordering of the list in a subscriber's rental queue, an item which could be added to the queue and/or an item which could be removed from the queue are selected.

The claim 1 process does not end there. "[F]urther wherein at least for step (d)(2) said monitoring compares content of playable media items

12

Appeal 2010-004101
Application 10/770,767

previously selected by the subscriber with content of playable media items in said subscriber rental queue, including said second proposed playable media item, to determine if said second proposed playable media item should be removed." Claim 1. So, "at least" when selecting an item which *could be* removed from the queue [i.e., step (d)(2)], the broadly-encompassing queue monitoring control rules that are used to determine if a change should be made to a composition and/or ordering of a list are not specified [i.e., step (c)] are further used to compare items a subscriber has selected with items in the rental queue to determine if that second proposed playable media item *should* be removed from the rental queue.

Finally, pursuant to step (e), the claimed process includes a subscriber authorizing the generation of a new ordered list of the items in the rental queue as a result of steps (c) and (d), "wherein at least some playable media items including said second proposed playable media item can be automatically removed by the computing system for the subscriber from said subscriber rental queue in response to said authorization" (claim 1).

Putting it all together, claim 1 is drawn to a computer-enable process reasonably broadly covering

- Setting up a rental queue with playable media items;
- Setting up queue monitoring control rules;
- Using the queue monitoring control rules to automatically monitor the rental queue to determine if the items in the rental queue need to be changed;
- Automatically selecting an item in the rental queue for removal;

13

Appeal 2010-004101
Application 10/770,767

- Receiving authorization from the subscriber to remove the selected item; and,
- Re-ordering the items in the rental queue.

Having construed claim 1 according to the familiar canons of claim construction, that is, giving the claim "[its] broadest reasonable interpretation consistent with the specification" and "in light of the specification as it would be interpreted by one of ordinary skill in the art." *See In re Am. Acad. of Sci. Tech. Ctr.*, 367 F.3d 1359, 1364 (Fed. Cir. 2004), we find that the claim is clear and is not amenable to two or more plausible claim constructions. Rather, it is merely broad. *Cf. In re Robins*, 429 F.2d 452, 458 (CCPA 1970). "Giving the language its broadest possible meaning, as we are bound to do in the absence of special definitions by appellant, the breadth of the claims insofar as the catalyst is concerned is indeed immense. However, "Breadth is not indefiniteness." [citation omitted]."

For the foregoing reasons, we do not sustain the rejection of claim 1 for indefiniteness.

For the same reasons we will not sustain the rejection of claims 5, 10, 11, 22-24, 27, 28, and 29-30. Notwithstanding that a claim construction analysis was not provided, in our view, the claims are not indefinite but merely broad.[2]

---

[2] The Examiner did properly make the Appellant aware of various informalities. The Appellant has acknowledged them and indicated a willingness to correct them. See footnote 1, p. 15 of Appellant's brief. See MPEP 608.01(m) and 37 C.F.R. §.1.75.

A015

Appeal 2010-004101
Application 10/770,767

*The rejection of claims 1-7, 9, 21, 22, and 24-28 under 35 U.S.C. § 102(e) as being anticipated by Hastings.*

We will not sustain the rejection. We agree with the Appellant that the claim1 process positively requires "the computing system [to] support[ ] both steps (d)(1) and d(2)." Thus, to anticipate, Hastings must describe, expressly or inherently, a computer system that supports not only "automatically selecting a first proposed playable media item to be added to the subscriber rental queue" (step (d)(1)) but also "automatically selecting a second proposed playable media item to be removed from the subscriber rental queue" (step d(2)).

It is well settled that in order for the Examiner to establish a prima facie case of anticipation, each and every element of the claimed invention, arranged as required by the claim, must be found in a single prior art reference, either expressly or under the principles of inherency. See generally, *In re Schreiber*, 128 F.3d 1473, 1477 (Fed. Cir. 1997). Given the positive recitation in claim 1 that the computer system *support* both steps (d)(1) and d(2), it was insufficient to make only the finding that Hastings supports step (d)(1). "[E]xaminer has addressed step 1 of part d) so step 2 is not required to rejection (sic, reject) the claim. Because of this, the further limitations for part d) step 2 are not required." Ans. 10. To reach the conclusion that Hastings anticipated the claimed subject matter, it was

15

Appeal 2010-004101
Application 10/770,767

necessary also to find that Hastings supports step (d)(2).[3] Because that was not done, a prima facie case of anticipation of claim 1 was not made out in the first instance.

We reach the same conclusion as to claims 2-7, 9, 21, 22, and 24-29 which depend from claim 1.

*The rejection of claims 8, 10-16, 18-20, 23, 29, and 30 under 35 U.S.C. § 103(a) as being unpatentable over Hastings.*

We will not sustain the § 103 rejection of claims 8 and 23, which depend from claim 1, because the Examiner has not addressed the positive recitation in claim 1 that the computer system supports both steps (d)(1) and d(2). Apparently the Examiner implicitly relies on the argument made in support of the § 102 rejection of claim that Hastings is not required to disclose a computer system supporting step d(2). That argument is equally untenable here in the context of establishing a prima case of obviousness for the subject matter of claims 8 and 23 over Hastings.

Independent claim 10 is similar to claim 1. Claim 10 is drawn to a computer-enable process reasonably broadly covering

• During a first data session, receiving subscriber preference data including playable-media rental queue monitoring options;

---

[3] It appears the Examiner construed steps (d)(1) and (d(2) as alternative limitations because they are connected by the conjunction "and/or." We need not reach a conclusion as to this issue because limitation (d) also recites "wherein the computing system supports both steps (d)(1) and d(2);"

16

Appeal 2010-004101
Application 10/770,767

- Generating a subscriber profile for use by a "recommender system";
- Using the subscriber preference data to monitor the rental queue and determine if items in the rental queue should be changed;
- Using the recommender system to process the subscriber profile and generate a recommendation for a proposed first playable media item that is likely to be of interest to the subscriber;
- Upon receiving authorization from the subscriber and without requiring a second data session, automatically inserting the proposed first playable media item into the rental queue; and
- Upon receiving authorization from the subscriber and based on comparing content of a second playable media item in the rental queue to content of other playable media items viewed by the subscriber, automatically removing the second playable media item from the rental queue.

The Examiner does not adequately address all the limitations in claim 10. The Examiner states: "All that is claimed is comparing a media item to content of the queue and removing it." Ans. 15. According to the Examiner "this step is not recited as being done by the system and can be actually performed by the subscriber themselves." Ans. 15. "The limitation in part f) reads on an individual realizing that a movie in their queue has already been seen (comparing step) and then removing the movie from their queue so that they do not receive a movie they have already seen. This would have been obvious to one of ordinary skill in the art." Ans. 15.

We do not disagree that, at the time of the invention, it was known to

17

Appeal 2010-004101
Application 10/770,767

review a selection of items and, if one wanted to change one of the selected items, for whatever reason, to remove it and add another. Nor do we consider automating such a procedure unobvious. It is generally obvious to automate a known manual procedure or mechanical device. *See Leapfrog Enterprises Inc. v. Fisher-Price Inc.*, 485 F.3d 1157 (Fed. Cir. 2007). That being said, the claimed method requires somewhat more. Step (f), which is at issue here, requires: "automatically removing a second playable media item from said rental queue based on comparing content of said second playable media item to content of other playable media items viewed by the subscriber,] wherein playable media items can be *automatically both added to and removed from* said subscriber rental queue for the subscriber *by the computing system in response to said authorization*." Claim 10. Emphasis added. The position the Examiner has taken in arguing that all that is claimed is comparing a media item to content of the queue and removing it and that that basic procedure could be performed by the subscriber themselves is insufficient underpinning for a legal conclusion of obviousness for the claimed subject matter. The difference between the claimed subject matter and the prior art, i.e., Hastings and what was known in the art at the time of the invention, is greater than the Examiner makes out. The claim requires a computer system that automatically both adds to and removes items from a subscriber rental queue for the subscriber in response to a subscriber's authorization. The Examiner has not shown that Hastings discloses a process with such a system or that one of ordinary skill in the art would have been led to the claimed process with such a system given what Hastings discloses and what was generally known in the art at the time of the

18

Appeal 2010-004101
Application 10/770,767

invention. In rejecting claims under 35 U.S.C. § 103, the examiner bears the
initial burden of presenting a prima facie case of obviousness. S*ee In re
Rijckaert*, 9 F.3d 1531, 1532 (Fed. Cir. 1993). A prima facie case of
obviousness is established by presenting evidence that the reference
teachings would appear to be sufficient for one of ordinary skill in the
relevant art having the references before him to make the proposed
combination or other modification. *See In re Lintner*, 9 F.2d 1013, 1016
(CCPA 1972).

For the foregoing reasons, we find that the Examiner has not made out
a prima facie case of obviousness for the subject matter of claim 10.
Accordingly we will not sustain the rejection. We reach the same conclusion
as to claims 29 and 30 that depend from claim 10. *Cf. In re Fritch*, 972 F.2d
1260, 1266 (Fed. Cir. 1992) ("[D]ependent claims are nonobvious if the
independent claims from which they depend are nonobvious.").

We also do not find the position the Examiner has taken in rejecting
independent claim 11 provides sufficient reasoning to support a legal
conclusion of obviousness for the claimed subject matter. The Examiner
finds that "[i]n Hastings the monitoring routine generates status information
such as how many movies are out so that it can be determined whether or not
a new movie can be sent or not. When a new movie is to be sent out, that
movie is removed from the subscriber queue, which is done by a software
routine (1st part of section d)." Ans. 16. But the system of claim 11 does not
merely remove an item. Rather, the system functions so that "a first playable
media item can be automatically removed for the subscriber by said
subscriber queue modification routine based on a comparison of content of

19

Appeal 2010-004101
Application 10/770,767

playable media items previously selected by the subscriber with content of said first playable media items in said subscriber rental queue and without using said manual input based subscriber selection routine." In other words, the system employs a routine that can automatically remove an item depending on a comparison of the content of previously selected items and the content of the item to be removed without using selection criteria. The question that needed to be addressed was whether it would have been obvious to one of ordinary skill in the art to provide such a system given what Hastings discloses. We do not see in the analysis how one of ordinary skill in the art would have been led to a system that employs a routine that can automatically remove an item depending on a comparison of the content of previously selected items and the content of the item to be removed without using selection criteria as claimed given Hastings and what was generally known in the art at time of the invention.

We find that a prima facie case of obviousness for the subject matter of claim 11 over the cited prior art has not been made out in the first instance and accordingly, the rejection of claim 11, is not sustained. We reach the same conclusion as to claims 12-16 and 18-20 that depend from claim 10. *Ibid*.

*The rejection of claim 17 under 35 U.S.C. § 103(a) as being unpatentable over Hastings and Elston.*

This rejection will also not be sustained. Claim 17 depends on claim 11 whose rejection under § 103 over Hastings was not sustained. The analysis associated with the rejection of claim 17 (Ans. 17-18) does not

20

Appeal 2010-004101
Application 10/770,767

overcome the deficiency in the prima facie case of obviousness for the subject matter of claim 11 discussed above. How one of ordinary skill in the art would have been led to a system that employs a routine that can automatically remove an item depending on a comparison of the content of previously selected items and the content of the item to be removed without using selection criteria as claimed given Hastings and what was generally known in the art at time of the invention remains unexplained.

## CONCLUSIONS

The rejection of claims 1-30 under 35 U.S.C. § 112, first paragraph, as failing to comply with the written description requirement is affirmed.

The rejection of claims 1-30 under 35 U.S.C. § 112, second paragraph, as being indefinite for failing to particularly point out and distinctly claim the subject matter which applicant regards as the invention is reversed.

The rejection of claims 1-7, 9, 21, 22, and 24-28 under 35 U.S.C. § 102(e) as being anticipated by Hastings is reversed.

The rejection of claims 8, 10-16, 18-20, 23, 29, and 30 under 35 U.S.C. § 103(a) as being unpatentable over Hastings is reversed.

The rejection of claim 17 under 35 U.S.C. § 103(a) as being unpatentable over Hastings and Elston is reversed.

## DECISION

The decision of the Examiner to reject claims 1-30 is affirmed.

No time period for taking any subsequent action in connection with this appeal may be extended under 37 C.F.R. § 1.136(a)(1)(iv).

21

Appeal 2010-004101
Application 10/770,767


AFFIRMED

JRG

22

A023



U̲NITED S̲TATES P̲ATENT AND T̲RADEMARK O̲FFICE

UNITED STATES DEPARTMENT OF COMMERCE
United States Patent and Trademark Office
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 10/770,767 | 02/02/2004 | John N. Gross | JNG 2004-3 | 1622 |

52447          7590          02/03/2014

PATENTBEST
1195 Park Avenue
Suite 202A
EMERYVILLE, CA 94608

| EXAMINER |
|---|
| RUHL, DENNIS WILLIAM |

| ART UNIT | PAPER NUMBER |
|---|---|
| 3689 | |

| NOTIFICATION DATE | DELIVERY MODE |
|---|---|
| 02/03/2014 | ELECTRONIC |

**Please find below and/or attached an Office communication concerning this application or proceeding.**

The time period for reply, if any, is set in the attached communication.

Notice of the Office communication was sent electronically on above-indicated "Notification Date" to the following e-mail address(es):

ANDREW@PATENTBEST.COM
patent@patentbest.com

UNITED STATES PATENT AND TRADEMARK OFFICE

_____

BEFORE THE PATENT TRIAL AND APPEAL BOARD

_____

*Ex parte* JOHN N. GROSS

_____

Appeal 2010-004101
Application 10/770,767
Technology Center 3600

_____

Before HUBERT C. LORIN, ANTON W. FETTING, and
BIBHU R. MOHANTY, *Administrative Patent Judges*.

LORIN, *Administrative Patent Judge*.

DECISION ON REQUEST FOR REHEARING

STATEMENT OF THE CASE[1]

The Appellant filed a Request for Rehearing under 37 C.F.R. § 41.52

(filed Oct. 19, 2013) of the Decision on Appeal (mailed Aug. 19, 2013).

_____

[1] Our Decision relies on Appellant's Request for Rehearing ("Req.," filed
Oct. 19, 2013), the Board Decision ("Dec.," mailed Aug. 19, 2013),
Appellant's Appeal Brief ("App. Br.," filed Mar. 25, 2009) and Reply Brief
("Reply Br.," filed Aug. 24, 2009), and the Examiner's Answer ("Ans.,"
mailed Jun. 22, 2009).

Appeal 2011-004101
Application 10/770,767

In the Decision on Appeal, the Board

- Affirmed the rejection of claims 1-30 under 35 U.S.C. § 112, first paragraph, as failing to comply with the written description requirement;

- Reversed the rejection of claims 1-30 under 35 U.S.C. § 112, second paragraph, as being indefinite for failing to particularly point out and distinctly claim the subject matter which applicant regards as the invention;

- Reversed the rejection of claims 1-7, 9, 21, 22, and 24-28 under 35 U.S.C. § 102( e) as being anticipated by Hastings;

- Reversed the rejection of claims 8, 10-16, 18-20, 23, 29, and 30 under 35 U.S.C. § 103(a) as being unpatentable over Hastings; and,

- Reversed the rejection of claim 17 under 35 U.S.C. § 103(a) as being unpatentable over Hastings and Elston.

The Request seeks reconsideration only as to the affirmance of the rejection of claims 1-30 under 35 U.S.C. § 112, first paragraph, as failing to comply with the written description requirement. Req. 2.

DISCUSSION

The Appellant (a) "[disagrees and traverses ... the assertion made in the Decision that] 'the Examiner has taken the position that the Specification does not disclose [that] an item is actually removed from the queue based on a comparison step as claimed' and that '[s]ince the Appellant has not

2

Appeal 2011-004101
Application 10/770,767

addressed the Examiner's position, the Appellant has not shown the
Examiner to be in error' (Decision at 9, internal quotations and citations
omitted)" (Req. 2) and (b) "submits that, in rendering its Decision, the
Honorable Board has overlooked specific passages that Appellant cited for
support" (Req. 2).

We reproduce the passage from the Decision here at issue:

The rejection of claims 1-30 under 35 U.S.C. § 112, first paragraph, as
failing to comply with the written description requirement.

The Appellant has not shown the Examiner to be in error in
concluding that the Specification fails to provide adequate written
descriptive support for the subject matter of claims 1-30 in
compliance with 35 U.S.C. § 112, first paragraph.

The Appellant argues that the Specification reasonably conveys
that, at the time of the invention, the applicant had possession of the
limitation that "titles can be automatically removed from a subscriber
rental queue" (Reply Br. 3). The Appellant criticizes the Examiner:
"[w]hen presented with other examples of where titles are in fact
automatically removed from the subscriber queues, the Examiner
elects to ignore the cited sections and instead focus on a selected area
that he thinks supports his perspective." Reply Br. 4.

However, the Examiner is not taking the position that the
Specification fails to reasonably convey that, at the time of the
invention, the applicant had possession of the limitation that titles can
be automatically removed from a subscriber rental queue. In fact, the
Examiner could not have taken that position because the automatic
removal of a title from a subscriber rental queue was originally
claimed. It would have been contrary to the Examiner's "new matter"
rejection. See Ans. 4.

3

Appeal 2011-004101
Application 10/770,767

> Rather, the Examiner has taken the position that the
> Specification does not disclose "an item is actually removed from the
> queue based on a comparison step as claimed." Ans. 4 (emphasis
> added). "[U]pon an electronic text search of the specification the
> words compare or comparing or compared to not appear in
> conjunction with remove or removal or removed." Ans. 5.

> Since the Appellant has not addressed the Examiner's position,
> the Appellant has not shown the Examiner to be in error in concluding
> that the Specification fails to provide adequate written descriptive
> support for the subject matter of claims 1-30 in compliance with 35
> U.S.C. § 112, first paragraph. The rejection is sustained.

Decision 7-9.

The Appellant (Req. 2) is accurate that the Board found that the

Examiner took "the position that the Specification did not disclose 'an item

is actually removed from the queue based on a comparison step as claimed'

(Ans. 4)." Dec. 9.

The Appellant (Req. 2) is accurate that the Board found the Appellant

had not addressed the Examiner's position and for that reason found that the

Appellant had not shown the Examiner to be in error.

The Appellant is not accurate in stating that the Decision "assert[s]

that Appellant failed to point out where the Specification discloses that such

automatic removal of an item is performed 'based on a comparison step.'"

Req. 2. The Decision in fact states that "the Appellant has not addressed the

Examiner's position." Decision 9.

The Appellant criticizes the Examiner and the Board for not

specifically identifying the claim limitation at issue. Req. 2.  The Examiner

stated: "In the independent claims applicant has recited that the system

compares content of a playable media item to content of media items viewed

4

Appeal 2011-004101
Application 10/770,767

by the subscriber and automatically removes the second playable media item." Ans. 4. The Board quoted from the Answer: "the Examiner has taken the position that the Specification does not disclose 'an item is actually removed from the queue based on a <u>comparison step</u> as claimed.' Ans. 4 (emphasis added)." Dec. 9. It is plainly evident that both the Examiner and the Board were referring to the claim limitation

> further wherein at least for step (d)(2) said monitoring <u>compares</u> content of playable media items previously selected by the subscriber with content of playable media items in said subscriber rental queue, including said second proposed playable media item, to determine if said second proposed playable media item should be <u>removed</u>.

Claim 1. (Emphasis added). There is no other claim limitation describing "an item is actually removed from the queue based on a comparison step as claimed" (Ans. 4).

The Appellant is correct that the Appeal Brief provided a summary of the claimed subject matter which indicated that the claim limitation at issue was described at p. 12, ll. 12-20. Req. 3 (citing to App. Br. 4). But this disclosure was not included or mentioned in any part of any argument challenging the Examiner's position. The Board could not have overlooked what was not presented to it. *Cf. DeSilva v. DiLeonardi*, 181 F.3d 865, 867 (7th Cir. 1999) ("[An appeal] brief must make all arguments accessible to the judges, rather than ask them to play archaeologist with the record.")

The Appellant is not accurate in stating that the Appeal Brief provides as support the passage from page 11 of the Specification that is reprinted in the Request. Req. 3. There is a passage in the Appeal Brief (see App. Br. 11) but it is not the entire passage reprinted in the Request. The Appeal

5

Appeal 2011-004101
Application 10/770,767

Brief makes it clear that it is a portion of the Specification that the <u>Examiner</u> cited. The Examiner had stated:

> The Examiner [had] reviewed these sections [including a passage from page 11 of the Specification] and [did] not see where it has been disclosed that an item is actually removed from the queue based on a comparison step as claimed. It seems to be disclosed that a title may bump another one as far as shipping order goes but where is there support in the specification as originally filed for the actual removal of the item.

Ans. 4.  The Appellant responded by arguing that "Applicant agrees that in this scenario, the title is not entirely removed." App. Br. 11.  The Appellant did not use the shortened passage taken from page 11 of the Specification to argue that the Specification in fact provides adequate written description for "removing" an item from the queue "based on a comparison step as claimed" (Ans. 4) and thereby refute the Examiner's position.  The Appeal Brief does not make the argument, as the Request now does, that

> As is evident, the above passage [page 11 of the Specification] describes "bumping" of a title <u>based on a comparison</u>. (Appellant's construction of the term "bumping" to include removal is described in depth in the briefs.) Appellant respectfully submits that this passage clearly provides written description for the elements for which the Examiner asserted that written description was lacking.

Req. 3.  The Board could not have addressed this argument because it was not before it when the Decision was rendered.

The Appellant is correct in stating that "the Decision quotes the Examiner's assertion that '[U]pon an electronic text search of the specification the words compare or comparing or compared to [sic] not appear in conjunction with remove or removal or removed,' Decision at 9,

6

Appeal 2011-004101
Application 10/770,767

quoting the Examiner's Answer at 5." Req. 4.  However, the Appellant is
inaccurate to state that the Board was requiring the "searching for particular
words in association with one another and concluding that written
description does not exist when those exact associations are not found"
(Req. 4).  That is simply not the case and the Board would not have so
required.  "[T]he prior application need not describe the claimed subject
matter in exactly the same terms as used in the claims . . . . " *Eiselstein v.
Frank*, 52 F.3d 1035, 1038 (Fed. Cir. 1995).  The Decision included said
quote from the Examiner as a way to make it abundantly clear to the
Appellant that the Examiner was seeking to determine whether the
Specification provided adequate written descriptive support for "removing"
an item from the queue "based on a comparison step as claimed" (Ans. 4).
The Appellant could have challenged the manner in which the Examiner
sought to make that determination but did not do so.  Rather the Appeal
Brief argued a different point: "[t]here is ample disclosure for explaining
that the claimed invention includes functionality for automatically adding
<u>and</u> removing titles from subscriber queues based on automatic selections of
desirable media items" (App. Br. 11).  The Appellant failed to appreciate the
Examiner's position.  As the Board stated: "the Examiner is not taking the
position that the Specification fails to reasonably convey that, at the time of
the invention, the applicant had possession of the limitation that titles can be
automatically removed from a subscriber rental queue." Dec. 9.

Finally, we disagree with the statement that "[a]s Appellant did
clearly set forth in the briefs, the Specification describes situations in which
item removal occurs in connection with a comparison, including

7

Appeal 2011-004101
Application 10/770,767

comparisons with the content of items in the queue." Req. 4. The evidence does not support it. In rendering its Decision, the Board considered all specific passages that Appellant cited in support of the arguments made. But the arguments made did not address the Examiner's position. The argument now being advanced was not before the Board and because it was not before the Board, the Board could not have overlooked it in reaching its Decision.

For the foregoing reasons, we are not persuaded as to error in the affirmance of the rejection of claims 1-30 under 35 U.S.C. § 112, first paragraph, as failing to comply with the written description requirement.


CONCLUSION

We have considered the Appellant's Request for Rehearing but find no error in the affirmance of the rejection of claims 1-30 under 35 U.S.C. § 112, first paragraph, as failing to comply with the written description requirement.


<u>DENIED</u>

JRG